IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


PATRICIA M. BAREY and
PEERLESS PROPERTIES, INC.,

                **Plaintiffs,**

vs.                                      Civ. No.  14-371 JCH/GBW

RICE INSURANCE SERVICES
COMPANY, LLC, and CONTINENTAL
CASUALTY COMPANY,

                **Defendants.**


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants Rice Insurance Services Company, LLC's and Continental Casualty Company's Motion for Summary Judgment* [Doc. 33]. Plaintiffs Patricia Barey ("Barey") and Peerless Properties, Inc. ("Peerless) have filed a Rule 56(d) Affidavit [Doc. 37], a response [Doc. 38], and a supplemental response [Doc. 41] to the motion. Defendants filed a reply. [Doc. 46]. At issue in the motion is whether Defendants Rice Insurance Services Company, LLC's ("Rice") and Continental Casualty Company ("Continental") are liable to Plaintiffs for failure to provide insurance coverage and for insurance bad faith. After considering all of the foregoing, along with the applicable legal authorities, the Court concludes that the motion should be granted and the Plaintiffs' claims should be dismissed with prejudice.

## LEGAL STANDARD

Summary judgment is warranted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The

substantive law of New Mexico governs the Court's consideration of the merits of Plaintiffs' claims. As a federal court sitting in diversity, this Court's task is "simply to 'ascertain and apply'" New Mexico law, attempting to "predict what the state's highest court would do" if faced with the specific issues before it. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944)).

## UNDISPUTED MATERIAL FACTS

Continental issued a group Real Estate Licensees Errors and Omissions Policy No. 12 EO 0009NM (the "Policy") to the New Mexico Real Estate Commission on behalf of all Commission licensees who hold an active license under New Mexico Real Estate License Law and who have paid the required premium ($252.00) for the claims-made-and-reported policy period from January 1, 2012 to January 1, 2013. (Doc. 33-1, Declarations at CCC-00002). Rice contracted with the State of New Mexico Regulation and Licensing Department to administer the New Mexico Real Estate Commission's Errors and Omissions (E&O) Insurance Program for active New Mexico licensed real estate brokers. (Doc. 12, Defs.' Answer ¶ 2).

Barey is a Licensee and an Insured under the Continental Policy, (Doc. 33-2, Certificate of Coverage), and the owner of Peerless, a real estate sales and brokerage company, (Doc. 1-1, Pltfs.' Complaint ¶ 1; Doc. 12, Defs.' Answer ¶ 1).

Pursuant to the Policy's "Defense" Agreement, "[Continental] has the right and duty to defend the Insured against any Claim seeking Damages covered by this policy until the applicable Limits of Liability or Sublimits of Liability are exhausted. . . . [Continental] has no duty to defend any Claim not covered by this policy." (Doc. 33-1, Policy § I (Coverage) at CCC-00003). The Policy defines a Claim, in relevant part, to mean "service of a lawsuit . . . against the Insured . . . alleging a negligent act, error, or omission in the performance or failure to perform

Professional Services. . . ." (Doc. 33-1, Policy § VIII (Definitions, Claim) at CCC-00009

(emphasis added)). The Policy defines Professional Services, in turn, to mean:

> 1. services performed by the Licensee as a real estate broker or salesperson as defined in New Mexico Real Estate License Law and for which the Licensee is required to have a real estate license;
> 2. Property Management Services performed by the Licensee;
> 3. auctioning real property; and
> 4. services performed or advice given by the Licensee as a real estate consultant or counselor, notary public, or escrow agent in connection with services as a Licensee in (1) (2), and (3) above.

(Doc. 33-1, Policy, § VIII (Definitions, Professional Services) at CCC-00010 – CCC-00011).

Finally, the policy defines Property Management Services as:

> the following services provided in connection with the management of commercial or residential property:
>
> 1. development and implementation of management plans and budget;
> 2. oversight of physical maintenance of property;
> 3. solicitation, evaluation, and securing of tenants and management of tenant relations, collection of rent, and processing evictions;
> 4. development, implementation, and management of loss control and risk management plans for real property;
> 5. solicitation and negotiation of contracts for sale and leasing of real property;
> 6. development, implementation, and management of contracts and subcontracts, excluding property and liability insurance contracts, necessary to the daily functioning of the property;
> 7. personnel administration; and
> 8. record keeping.

(Doc. 33-1, Policy, § VIII (Definitions, Property Management Services) at CCC-00011).

Coverage under the Policy also extends to any Real Estate Firm that Barey represents; however,

such coverage is available to the Firm only (a) for its vicarious liability for Barey's negligent

acts, errors, or omissions arising from Barey's Professional Services, and (b) only if the Policy

provides coverage for the Claim against Barey in the first instance. (Doc. 33-1, Policy § VIII

(Definitions, Insured) at CCC-00010). The Policy expressly excludes from coverage any Claim

alleging, arising from, or related to:

> H. libel, slander, defamation of character, disparagement, detention, humiliation, sexual harassment, false arrest or imprisonment, wrongful entry or eviction, violation of the right to privacy or malicious prosecution, personal injury, or other invasion of rights to private occupancy (the "Libel or Slander Exclusion");
> * * *
> Q. injury or damage expected or intended by the Insured . . . (the "Expected or Intended Damage Exclusion").

(Doc. 33-1, Policy § VI.H, Q (Exclusions) at CCC-00006, CCC-00008).

On September 12, 2012, New Mexico Consolidated Construction Services, LLC ("NMCCS") filed a complaint (the "Complaint") in the First Judicial District, County of Santa Fe, New Mexico against Barey and Peerless, captioned *New Mexico Consolidated Construction Services, LLC v. Peerless Properties, Inc. d/b/a Patricia Barey Real Estate and Patricia Barey*, Case No. D-101-CV-2012-02505 (the "NMCCS Lawsuit"). (Doc. 1-6). According to the Complaint in the NMCCS Lawsuit, NMCCS is the owner of property (the "Property") in Santa Fe County, New Mexico. (Doc. 1-6, Compl. ¶ 5). NMCCS alleges that it entered into a listing agreement (the "Listing Agreement") with Peerless for the sale of the Property. Doc. 1-6, Compl. ¶ 6). NMCCS also alleges that it contracted with Barey to provide "administrative services" for NMCCS (the "Administrative Agreement"). (Doc. 1-6, Compl. ¶ 7).

NMCCS alleges that, without factual or legal basis or justification, Barey, on behalf of Peerless, filed two fraudulent liens against the Property to collect amounts due under the Agreements. (Doc. 1-6, Compl. ¶¶ 8-10, 13). First, on May 2, 2012, Barey filed a lien for administrative work done by Barey and Peerless. (Doc. 1-6, Compl. ¶ 8). According to the lien, Peerless sought to collect $192,790.00 allegedly due under the Administrative Agreement. (Doc. 33-4, Lien May 2, 2012). Second, on July 31, 2012, Barey filed a lien for payment allegedly due to Peerless under the Listing Agreement. (Doc. 1-6, Compl. ¶ 8). According to that lien, Peerless

sought to collect approximately $159,000.00 in commissions (plus additional taxes, fees, and interest) allegedly owed under the Listing Agreement. (Doc. 33-5, Lien July 31, 2012).

NMCCS's Complaint alleges that the two liens filed by Barey and Peerless slandered the title to the Property owned by NMCCS, cast a cloud on NMCCS's title to the Property, and disparaged NMCCS's rights to the Property. (Doc. 1-6, Compl. ¶¶ 12, 14, 16-18, 21, 23-24). The Complaint alleges that the liens rendered the title to the Property unmerchantable and detrimentally affected NMCCS's ability to sell the Property to third parties. (Doc. 1-6, Compl. ¶¶ 12, 14-15, 17-18, 23-24, 27). NMCCS further alleges that the liens were filed knowingly, fraudulently, and intentionally by Barey and Peerless with the intent to harm NMCCS by depriving it of the right to sell its property and to unlawfully extort money from NMCCS. (Doc. 1-6, Compl. ¶¶ 11, 15, 23, 27). Alternatively, NMCCS alleges that Barey and Peerless negligently filed the liens on the Property. (Doc. 1-6, Compl. ¶¶ 16, 24). NMCCS's Complaint asserts three causes of action against Barey and Peerless for injunctive relief (Count I), slander of title (Count II), and prima facie tort (Count III). (Doc. 1-6, Compl. ¶¶ 20-28).

Following Barey's initial reporting of the NMCCS Lawsuit to Rice in September 2012, (Doc. 12, Defs.' Answer ¶ 15), Barey and Peerless' defense counsel in the NMCCS Lawsuit provided additional information to Rice in July 2013, (Doc. 33-6, Ltr. July 9, 2013). In that letter, counsel contended that Barey filed the lien for payment under the Administrative Agreement at the request of NMCCS's member, Max Tafoya. (Id. at CCC-00057). Specifically, counsel asserted that Tafoya suggested that the lien would assist in putting pressure on NMCCS's lender, which had filed a foreclosure action on the Property, and also provide incentive for Barey and Peerless to continue to provide administrative services to NMCCS, which they had threatened to end due to non-payment. (Id.).

Peerless voluntarily released the lien for payment under the Listing Agreement on September 11, 2012. (Ex. 7, Release of Lien, Sept. 11, 2012). Further, the court in the NMCCS Lawsuit found the second lien under the Administrative Agreement invalid and ordered it released in April 2014. (Ex. 8, Order Apr. 28, 2014).

On February 17, 2014, Barey and Peerless filed their Complaint [Doc. 1-1] in this case in First Judicial District Court, County of Santa Fe, New Mexico. In their Complaint, they petition the Court for a declaration that the Policy required Defendants to defend and indemnify Barey and Peerless in the NMCCS Lawsuit (Count I). They also assert claims under the Trade Practices and Fraud Act, NMSA 1978, § 59A-16-1 et seq (Count II); the Unfair Practices Act, NMSA 1978 § 57-12-1 et seq. (Count III); and insurance bad faith (Count IV). On April 21, 2014, Defendants Rice and Continental removed the case to this federal district court. [Doc. 1]

## DISCUSSION

### I.      Rule 56(d) Request for Discovery

Defendants Rice and Continental have filed a motion for summary judgment on the claims brought by Plaintiffs Barey and Peerless on the grounds that the Policy does not afford coverage (or potential coverage) for the claims brought against Barey and Peerless by NMCCS. In response, Barey and Peerless have filed a Rule 56(d) motion [Doc. 37] requesting the opportunity to conduct limited discovery prior to being required to respond to Defendants' motion for summary judgment.

Rule 56(d) of the Federal Rules of Civil Procedure states:

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
      (1) defer considering the motion or deny it;
      (2) allow time to obtain affidavits or declarations or to take discovery; or
      (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "The general principle of Rule 56[d] is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (internal quotation marks omitted). Rule 56[d] does not require, however, that summary judgment not be entered until discovery is complete. *See id.* at 784. To invoke the shelter that Rule 56(d) provides, a party must (i) file an affidavit, *see Pasternak v. Lear Petroleum Exploration Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986); (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, *see Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992); (iii) explain why facts precluding summary judgment cannot be presented, *see id.*; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment, *see id*.

Here, Plaintiffs ask for discovery in two areas in order to supplement their responses [Doc. 38 and 41] to the motion for summary judgment. First, they seek to depose Anita Beilman, the claim specialist employed by Rice who wrote the October 3, 2012 letter [Doc. 38-1] denying coverage for NMCCS's claims against Barey and Peerless. *See* Doc. 37 at 1. Plaintiffs intend to question Beilman about the investigation, or lack thereof, she conducted prior to denying coverage for these claims. Plaintiffs assert that if Beilman had interviewed Barey, she would have learned that "the monetary dispute between Ms. Barey and New Mexico Consolidated did not involve a disagreement over commissions, (which would arguably trigger consideration of the policy exclusion found in Section VI c), but rather involved a dispute over fees for management services." Doc. 37 at 2 (emphasis in original). Plaintiffs argue that the failure to investigate can give rise to a bad faith claim against the insurer. *Id*. at 2-3.

7

Defendants respond that Beilman did, in fact, attempt to interview Barey, who refused the interview and instead instructed Beilman to speak with her attorney. As evidence of this, they point to Beilman's letter to Barey, which references Beilman's conversation with Barey's lawyer. [Doc. 38-1, Oct. 3, 2012 Letter, CCC-00033]  Defendants also point out that "the scope of an insurer's investigation is only potentially relevant if it would have led to facts that could arguably bring a claim within the policy's coverage. Plaintiffs fail to point to any such facts . . ." Doc. 46 at 9.

The sole fact that Plaintiffs contend would have been revealed by a more thorough investigation is that their dispute with NMCCS did not involve a disagreement over commissions, but rather a dispute over fees for management services. Doc. 37 at 2. For purposes of Rule 56(d), the question is whether this fact is relevant to the question of coverage under the Policy such that it would impact the outcome of the motion for summary judgment. The Court concludes that it is not relevant because, as further explained below, the filing of the liens as alleged in NMCCS's Complaint is not a "negligent act, error, or omission in the performance or failure to perform Professional Services" as that term is defined in the Policy. It matters not whether the purpose of filing the liens was to recover commissions or fees, but only whether doing so constituted Professional Services. *See Hinkle v. State Farm Fire & Cas. Co.*, — N.M. —, 308 P.3d 1009, 1013 (Ct. App. 2013) (affirming summary judgment for insurer and finding that even if the insurer had done a reasonable investigation into the facts of the underlying complaint, the facts that could have been discovered would not have triggered a duty to defend). Because the question of whether the parties were disputing commissions or fees does not impact the coverage issue, the Court concludes that it will not allow Plaintiffs' requested discovery.

The second subject regarding which Plaintiffs seek discovery is Rice and Continental's respective rates of denial of coverage to insureds who purchased insurance policies through the New Mexico Real Estate Commission's Errors and Omissions Insurance Program. Doc. 37 at 3. Plaintiffs aver that Defendants have denied approximately 30% of such claims based on lack of coverage, and that this percentage is high compared to other insurers who have administered the program, and therefore "would be a relevant factor in the evaluation of the propriety of the coverage denial issued in this case." *Id.* at 4. However, a general comparison of denial rates among insurers is not relevant to whether an insurer acted properly with regard to determining coverage any one specific instance. The rate of denials might go to the issue of bad faith, but again, as set forth below the insurer's bad faith is not relevant to whether coverage exists under the Policy. And, in turn, in the absence of coverage, there simply is no actionable claim for bad faith. *Riordan v. Lawyers Title Ins. Corp.*, 393 F. Supp. 2d 1100, 1105-06 (D.N.M. 2005). In the absence of relevance to the coverage question, the Court will decline to allow the discovery.

Thus, Plaintiffs' request for discovery under Rule 56(d) will be denied.

## II.        Motion for Summary Judgment

In their motion for summary judgment, Defendants Rice and Continental argue that the Policy at issue provides no coverage for NMCCS's claims against Barey and Peerless. They contend that the Policy covers only negligent acts and omissions by Barey and Peerless in their performance of professional real estate agent services, not intentional acts or claims arising from slander or disparagement of title. Defendants point out that NMCCS has alleged that Plaintiffs committed *intentional* torts, and that they did so not while providing professional real estate agent services as defined by the Policy, but while trying to collect payments allegedly due to them. As a result, Defendants argue that there is no coverage under the Policy, generating no

duty to defend or indemnify Plaintiffs and no basis for the extra-contractual claims of bad faith and unfair insurance practices.

### A.      New Mexico Law

"New Mexico law treats an insurance policy as an ordinary contract to be construed according to customary principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013). "Generally, the goal of contract interpretation is to ascertain the intentions of the contracting parties." *Gallegos v. Pueblo of Tesuque*, 132 N.M. 207, 218, 46 P.3d 668, 679 (2002) (quoting *Ponder v. State Farm Mut. Auto. Ins. Co.*, 129 N.M. 698, 702, 12 P.3d 960, 964 (2000) (internal quotation marks omitted); *Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 630, 916 P.2d 822, 830 (1996)). "The court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Gallegos*, 132 N.M. at 218-19, 46 P.3d at 679-80 (quoting *Ponder*, 129 N.M. at 702, 12 P.3d at 964; *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987)). "Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted." *Richardson v. Farmers Ins. Co. of Am.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) (citing *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972)).

The obligation of an insurer is a question of contract law and will be determined by reference to the terms of the insurance policy. *See Safeco Ins. Co. of Am., Inc. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977). The clauses must be construed as intended to be a complete and harmonious instrument. *See Erwin v. United Benefit Life Ins. Co.*, 70 N.M. 138, 371 P.2d 791 (1962). Exclusionary clauses in insurance policies are to be narrowly construed,

with the insured's reasonable expectations providing the basis for the analysis. *See King v. Travelers Ins. Co.*, 84 N.M. 550, 556-57, 505 P.2d 1226, 1232-33 (1973).

An insurer's "duty to defend arises out of the nature of the allegations in the complaint, and is determined by comparing the factual allegations in the complaint with the insurance policy." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc*., 146 N.M. 717, 721, 213 P.3d 1146, 1150 (Ct. App. 2009) (internal citations and quotations omitted). The "duty to indemnify is distinct from [the] duty to defend," and resolution whether a party has a duty to defend does not "necessarily depend on there being a duty to indemnify." *BPLW Architects & Eng'rs, Inc*., 146 N.M. at 726, 213 P.3d at 1155 (citing *Ins. Co. of N. Am. v. Wylie Corp*., 105 N.M. 406, 409, 733 P.2d 854, 857 (1987)). If a complaint "states facts that bring the case within the coverage of the policy," then the duty to defend will be triggered. *Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo*, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992). Generally, an insurer's "duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit, or until it has been shown that there is no potential for coverage," and, when there are multiple causes of action, "the duty continues until every covered claim is eliminated." *Guest v. Allstate Ins. Co*., 149 N.M. 74, 80, 244 P.3d 342, 348 (2010) (citing S. Plitt et al., *Insurer's Duty to Defend: Nature, Commencement, and Termination*, 14 Couch on Insurance 3d, § 200:47 (Supp.2007)). Known but unpleaded facts may bring a claim within the coverage of the policy at the beginning of the litigation or at a later stage. *See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co*., 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990). "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured." *Miller v. Triad Adoption & Counseling Servs., Inc*., 133 N.M. 544, 548, 65 P.3d 1099, 1103 (Ct. App. 2003).

With respect to the duty to indemnify, New Mexico courts have held that "[i]f the allegations of the federal complaint clearly fall outside the provisions of [the] liability insurance policies, indemnity by the insurer is not required." *N.M. Physicians Mut. Liability Co. v. LaMure*, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993).

To prove a first-party claim for bad faith failure to pay her claim, an insured must prove that the insurer's reasons for denying payment of his claim were frivolous or unfounded. *Sloan v. State Farm Mut. Auto. Ins. Co.*, 135 N.M. 106, 85 P.3d 230, 236 (2004); Rule 13-1702, NMRA (2015). The terms "frivolous or unfounded" mean "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Sloan*, 85 P.3d at 237. "Frivolous and unfounded" in this context "does not mean "erroneous" or "incorrect" ... [i]t means an utter or total lack of foundation for an assertion of nonliability." *Id*. (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 827 P.2d 118, 134 (1992)). An insurance company has a right to deny a claim without exposure to a bad faith law suit if it has reasonable grounds to deny coverage. *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010); *Am. Nat. Prop. & Cas. Co. v. Cleveland*, — N.M. —, 293 P.3d 954, 958 (N.M. Ct. App. 2012); Rule 13-1702, NMRA (2015) ("An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.").

The interpretation of terms within an insurance policy is a question of law for the Court. *W. Farm Bureau Ins. Co. v. Carter*, 127 N.M. 186, 187, 979 P.2d 231, 232 (1999).

B.     **Potential Coverage Under the Policy**

In order for the Policy to provide coverage, there must be a "Claim," as that term is defined by the Policy: "service of a lawsuit . . . against the Insured . . . alleging a negligent act, error, or omission in the performance or failure to perform Professional Services. . . ." (Ex. 1,

Policy § VIII (Definitions, Claim) at CCC-00009). In this coverage action, Plaintiffs have the

burden of establishing that the Complaint in the NMCCS Lawsuit meets the Policy's definition

of a Claim, and specifically that the NCMMS Lawsuit alleges "a negligent act, error, or omission

[by Barey] in the performance . . . [of] Professional Services." *See Leafland Group–II,*

*Montgomery Towers Ltd. P'ship v. Ins. Co. of N. Am.*, ¶ 13, 118 N.M. 281, , 284, 881 P.2d 26, 29

(1994) (noting that "the insured must . . . show that its claim falls within the coverage provided

by the policy"). Plaintiffs have not met that burden in this case.

### 1.      *Not Performance of Professional Services*

In its Complaint, NMCCS alleged that Plaintiffs wrongfully filed liens on the Property to

extort and collect compensation allegedly due from NMCCS. The Court concludes that this is

not the performance or failure to perform "Professional Services," as that term is defined in the

Policy (quoted on page 3, supra).[1]

First, the filing of liens does not fit under subpart (1) of the Policy's definition of

Professional Services because a New Mexico real estate license is not required to file a lien.

Under NMSA 1978, § 61-29-1 (2005), an individual engaging in the business of an associate

broker or qualifying broker must have a license issued by the New Mexico Real Estate

Commission. *See also* 16.61.3.8 NMAC-N (2012) (noting that "[t]he New Mexico real estate

commission issues two types of real estate broker's licenses; an associate broker's license and a

qualifying broker's license"). However, the statutes and regulations do not list the filing of liens

as a job duty of either an associate broker or a qualifying broker for which a real estate license is

---

[1] The parties do not dispute that at various times Plaintiffs did provide "Professional Services," as that term is defined in the Policy, to NMCCS. However, the inquiry does not end there. The question for this Court is whether the conduct by Barey and Peerless that is at issue in the NMCCS Litigation—i.e., the filing of the liens against their client's property—constituted Professional Services.

required. *See* NMSA 1978 § 61-29-2(A)(3), (14) (2011). Barey and Peerless attempt to invalidate

subpart (1) of the definition of Professional Services by pointing out that any homeowner can list

his own home for sale by owner without having a real estate license, suggesting that this section

of the Policy is meaningless because on those grounds Defendants could deny coverage to a

realtor sued in connection with listing a home because such a "self-service" listing does not

require a real estate license. Doc. 38 at 5. However, as Defendants correctly point out, this

argument has no merit. Doc. 46 at 5 n.3. New Mexico law requires a broker to have a license to

list or sell another person's real estate, NMSA 1978, § 61-29-2(A)(3), (14) (2011). As a result, a

real estate broker who was sued for wrongdoing in the sale of another person's residential

property, that would fall within subpart (1) of this Policy's definition of Professional Services. In

any event, Barey and Peerless' actions as alleged in the NMCCS Litigation do not fall within

subpart (1).

The filing of liens does not satisfy Subpart (2) of the Policy's definition of Professional

Services because the allegedly wrongful behavior giving rise to the Complaint—Plaintiffs' filing

of the liens—was not the performance of "Property Management Services" for NMCCS. The

Policy defines Property Management Services in some detail, yet the filing of a lien by a broker

on a client's property does not satisfy any of the eight categories of services listed in the Policy's

definition.

Subpart (3) of the definition of Professional Services is not implicated because the

alleged filing of the liens is not the auctioning of NMCCS's Property.

Finally, subpart (4) of the definition of Professional Services is not implicated because

the alleged lien filings are not services performed or advice given by Barey as a real estate

consultant or counselor to NMCCS. As Defendants point out, NMCCS has alleged (and

Plaintiffs do not directly deny) that Plaintiffs filed the liens as part of Plaintiffs' efforts to collect compensation allegedly due to them. The NMCCS Lawsuit does not challenge the quality of any services provided by Barey and does not allege that Barey was negligent in carrying out her duties under the Agreements with NMCCS. Rather, it alleges that Barey did not have a factual or legal basis for filing the liens against the Property. Moreover, even if, as Plaintiffs have asserted, the liens were filed at NMCCS's suggestion, in such acts Barey was not performing services or giving advice to NMCCS as a real estate consultant or counselor in any of the first three categories of the definition of Professional Services. Indeed, no consultation or counseling was required of Plaintiffs when they filed the liens on the Property, regardless of whether done of their own accord to collect what was owed by NMCCS or at NMCCS's own suggestion.

In sum, the Court concludes that the facts and claims set forth in NMCCS's Complaint— that Barey improperly filed liens against her client's property to collect fees owed to her— simply is not a risk inherent in the real estate profession and, based on the clear language of the Policy, is not a covered claim alleging a negligent act, error, or omission in the performance or failure to perform Professional Services. Thus, the Court concurs with Defendants that the Policy did not provide potential coverage to Barey and Peerless for NMCCS's Complaint.

### 2.    *Libel or Slander Exclusion*

Defendants argue that the Policy's Libel or Slander Exclusion precludes potential coverage for the NMCCS Lawsuit in its entirety. The exclusion provides that there is no coverage for:

> any Claim alleging, arising from, or related to libel, slander, defamation of character, disparagement, detention, humiliation, sexual harassment, false arrest or imprisonment, wrongful entry or eviction, violation of the right to privacy or malicious prosecution, personal injury, or other invasion of rights to private occupancy.

(Ex. 1, Policy § VI.H (Exclusions) at CCC-00006). NMCCS's Complaint alleges that Barey improperly filed the two liens on the Property and that the liens have slandered the title to the Property owned by NMCCS, cast a cloud on NMCCS's title to the Property, and disparaged NMCCS's rights to the Property. (Doc. 1-6, Compl. ¶¶ 12, 14, 16-18, 21, 23-24). The Complaint also alleges that the liens have rendered the title to the Property unmerchantable and that NMCCS's ability to sell the property has been hindered. (Id. ¶¶ 12, 14-15, 17-18, 23-24, 27). Additionally, Count II of the Complaint sets forth a cause of action for "Slander of Title." (Id. ¶¶ 22-25).

Relying on *Valley Improvement Association, Inc. v. United States Fid. & Guar. Corp.*, 129 F.3d 1108 (10th Cir. 1997), Defendants argue that the Policy's Libel or Slander Exclusion applies not only to slander of individuals, but also to claims for slander of title such as those raised by NMCCS in its Complaint. In *Valley Improvement*, the court found that the policy's coverage for "the publication or utterance of a libel or slander or of other defamatory or disparaging material...." covered claims for slander of title. 129 F.3d at 1118. In response, Plaintiffs counter that the Libel or Slander Exclusion in this case does not apply, relying upon numerous cases from courts outside New Mexico not applying New Mexico law, in which those courts found that a policy that provides coverage for libel or slander of an individual does not cover claims of slander of title because they are separate and distinct torts. *See* Doc. 41 at 4-6. Plaintiffs extrapolate from these cases that an exclusion for libel and slander of a person does not apply to slander of title.

However, having found in Part II(B)(1) that the Policy at issue provides no coverage for the filing of liens because that is not Professional Services as defined by the Policy, the Court need not reach this issue regarding the applicability of the Policy's Libel or Slander Exclusion.

### 3.     *The Policy's Exclusion for Intentional Acts Applies to Prima Facie Tort*

Prima facie tort "occurs when a lawful act is conducted with an intent to injure and without sufficient economic or social justification, resulting in injury." *Lexington Ins. Co. v. Rummel*, 123 N.M. 774, 777 (1997). Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid traditional intentional tort categories. *Martinez v. N. Rio Arriba Elec. Coop., Inc.*, 132 N.M. 510, 516 (Ct. App. 2002). In New Mexico, the elements of a prima facie tort are (1) an intentional, lawful act by defendant, (2) intent to injure the plaintiff, (3) injury to the plaintiff, and (4) the absence of justification or insufficient justification for the defendant's acts. *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990). The New Mexico Supreme Court has held that the act complained of must be committed with intent to harm, but it need not be shown that the act was solely intended to injure the plaintiff. *Id*. at 395, 785 P.2d at 735.

Defendants contend that the Policy's Expected or Intended Damage Exclusion (Doc. 33-1, Policy § VI.H, Q (Exclusions) at CCC-00008) excludes this claim from coverage under the Policy. The Court agrees. The exclusion denies coverage for "injury or damage expected or intended by the Insured . . ." That intent is at the heart of a claim for prima facie tort, which is an intentional tort. The fact that NMCCS alleged in the alternative that Barey and Peerless were negligent does not somehow bring this particular intentional tort under the coverage of the Policy. For this additional, alternative reason, there is no coverage for NMCCS's prima facie tort claim against Barey and Peerless.

### 4.     *Rice Not Liable For Coverage Claims*

Defendants point out that the Policy was issued by Continental and that it was Continental, not Rice, that undertook a contractual obligation to Barey and Peerless. [Doc. 33 at

22] Defendants argue that Rice is entitled to summary judgment on the coverage claims (Counts I and V) for the additional reason that it is not a party to the insurance contract and therefore cannot be required to defend or indemnify the Plaintiffs. Barey and Peerless do not dispute this argument, although they do argue that a claims manager may be sued for violations of the Trade Practices and Frauds Act, which defines "insurer" to include those who service insurance contracts, as Rice did in this case. [Doc. 41 at 7].

The Court agrees with Defendants on this issue. For this alternative reason, Rice cannot be held liable on Counts I and V of Plaintiffs' Complaint because it was not a party to the insurance contract.

C.      **Extra-Contractual Claims (Counts II, III, and IV**)

The Court has concluded that there was no coverage for the NMCCS Lawsuit under the Policy, and therefore Defendants had no duty to defend or indemnify the Plaintiffs. Plaintiffs did not suffer a loss covered by the policy. Thus, Defendants' denial of coverage was justified. The remaining extra-contractual claims fail because there was no coverage under the policy. *See Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001) (summary judgment appropriate when the insurer has a reasonable basis for its decision to deny benefits); *New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1031 (D.N.M. 1997) (dismissing insured's extra-contractual statutory claims upon finding that insurers had properly denied coverage); *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992) (bad faith requires frivolous or unfounded refusal to pay); *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 117 N.M. 82, 88, 868 P.2d 1307, 1313 (Ct. App. 1994) (recognizing that "the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy").

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that *Defendants Rice Insurance Services Company, LLC's and Continental Casualty Company's Motion for Summary Judgment* [Doc. 33] is hereby **GRANTED** in its entirety, and summary judgment should be entered in favor of Defendants on all of Plaintiffs' claims. The Court will enter a Final Judgment to that effect contemporaneously with this Memorandum Opinion and Order.

_____

**UNITED STATES DISTRICT JUDGE**